UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DENNIS ALLEMANI and | ) | |
| NATHANIEL BARLOW, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:12-CV-00100-RWS |
| PRATT (CORRUGATED | ) | |
| LOGISTICS), LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
<u>FOR PARTIAL SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

I.  ARGUMENT .................................................................................................2

    A. The Court Should Separately Analyze Each Party's Summary
    Judgment Motion. ...................................................................................2

    B. Plaintiffs Were Properly Classified as Exempt. ...............................2

        1.  Plaintiffs were exempt administrative employees.....................................3

        2.  Plaintiffs were also exempt executive employees.....................................9

        3.  Plaintiffs are also exempt under the combination exemption..................14

    C. Because Plaintiffs' Work Affected Safety, the Motor Carrier
    Exemption Applies. ..................................................................................15

    D. The Proper Method of Calculating Overtime Damages Is Not Ripe for
    Determination. ..........................................................................................18

    E. Plaintiffs' Request for a Ruling on Pratt's "Good Faith" Is Also
    Premature....................................................................................................21

II.  CONCLUSION ...........................................................................................24

Plaintiffs Dennis Allemani and Nathaniel Barlow, Jr. ask the Court to grant them summary judgment on their Fair Labor Standards Act (FLSA) claim that Defendant Pratt (Corrugated Logistics), LLC misclassified them as exempt employees and so did not pay them overtime wages. But all the record evidence—which Pratt has taken care to describe in its summary judgment Memorandum [Doc. 67]—leads to the conclusion that the work Plaintiffs did as Pratt dispatchers was exempt work under the administrative, executive, and combination exemptions. Notably, the evidence establishing this consists not only of Plaintiffs' own testimony but also their admissions. To distract from this conclusion, Plaintiffs ask the Court to enter judgment as a matter of law on undisputed issues like jurisdiction, venue, and FLSA coverage, none of which Pratt disputes. More concerning, they ignore or misconstrue relevant Eleventh Circuit authority on the above exemptions. They even ask the Court for premature advisory opinions on various damages issues. This background noise should not prevent the Court from reaching the proper decision here: on this record, Pratt, not Plaintiffs, is entitled to summary judgment.

# I.   ARGUMENT

## A.  The Court Should Separately Analyze Each Party's Summary Judgment Motion.

Although both Plaintiffs and Pratt have moved for summary judgment on Plaintiffs' claims, this does not create an inference, much less a presumption, that genuine disputes of material fact do exist or that a trial is mandated here.  Instead, this Court must separately consider and rule on each party's dispositive motion. *See Vegter v. Canada Life Assur. Co.*, 2008 WL 2397349, at *9 (N.D. Ga. Jun. 9, 2008) ("When, as here, a district court is presented cross motions for summary judgment on the same issues, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 2720, at 335-36 (3d ed.1998)).

## B.  Plaintiffs Were Properly Classified as Exempt.

As fully set forth in Pratt's summary judgment Memorandum, the record evidence conclusively demonstrates that Pratt satisfies each element of the administrative and executive exemptions as a matter of law.  *See* Def.'s Mem. 3-

31. Plaintiffs' arguments to the contrary ignore or mischaracterize relevant Eleventh Circuit law and the record evidence and so should be rejected.[1]

## 1. Plaintiffs were exempt administrative employees.

The record evidence, including Plaintiffs' own testimony and admissions, shows that all the elements of the administrative exemption are met here.  Def.'s Mem. 17-31.  Plaintiffs concede the first element of both the administrative and executive exemptions (that they were paid on a salary basis), and, by failing to cite any relevant facts or law, they do not dispute the third element of the administrative exemption (that, as dispatchers, they exercised "discretion and independent judgment with respect to matters of significance").  Pls.' Br. 30-36.  Instead, Plaintiffs focus solely on the second element of the exemption: that, as dispatchers, their "primary duty" was performing "office or non-manual work directly related to the management or general business operations of the employer."  29 C.F.R. 541.200(a)(1)-(3).  According to Plaintiffs, Pratt cannot satisfy this element because: (i) Pratt failed to identify Plaintiffs' "primary duty" during a 30(b)(6) deposition; and (ii) Plaintiff did "production," not "administrative," work and as such their work was not "directly related to

---

[1] Inexplicably, Plaintiffs ask the Court to enter summary judgment on jurisdiction, venue, and whether Pratt is an "employer" under the FLSA.  Not only are these issues not in dispute, Pratt admitted them in its Answer long ago.

3

management or general business operations" of Pratt's Conyers facility.[2]  Pls.' Br.

31.  Both arguments are wrong.

First, Plaintiffs allege that Pratt's 30(b)(6) witness, National Logistics Manager

Tom Olshefski, did not properly identify Plaintiffs' "primary duty" during his

deposition.  Pls.' Br. 32.  In fact, Olshefski testified that *all* Plaintiffs' work as

dispatchers was critically important to Pratt's business.  *Id.*  Plaintiffs claim that

this "proves" Pratt cannot establish their "primary duty."  *Id.*  But they cite to no

authority—and none exists—holding that a plaintiff's "primary duty" must be

limited to one specific job task *or* that their primary duty should not be determined

from reviewing all the record evidence as a whole.  Here, that record evidence—

which consists of Plaintiffs' *own* deposition testimony and the unrefuted testimony

of Pratt's witnesses (including Tom Olshefksi)—overwhelmingly establishes that

Plaintiffs' primary duty was *managing the operations of the Conyers' dispatch*

*operation*.  *See* Olshefski Dep. at 20 (testifying that the "role of a dispatcher" at

Pratt is to assume "responsibility for the day-to-day activities of both the internal

---

[2]  Plaintiffs do not and cannot dispute that their work was non-manual and
performed in an office setting.  *See* Pls.' Br. 30-36; Greg Holley Decl. ¶ 8.  The
Declaration of Greg Holley, as well as all other record evidence cited herein was
previously provided to the Court as part of Defendant's Appendix in Support of its
Motion for Summary Judgment [Doc. 67].

fleet and the direction [and] use of third-party carriers.  They control everything on a day-to-day basis."); *see also* Def.'s Mem. 6-13

Second, Plaintiffs argue that they were not administratively exempt because, as dispatchers, they were allegedly engaged in "production" as opposed to "administrative" work.  This argument misses the mark, too.  To begin with, Plaintiffs seek a dispositive ruling on the administrative/production distinction, even though most courts (including those Plaintiffs cite) expressly hold that this distinction is *not dispositive* of whether the work employees do constitutes exempt administrative work.  For example, in *Puentes v. Siboney Contracting Co.*, 2012 WL 5193417 (S.D. Fla. Oct. 19, 2012), the court found a plaintiff-dispatcher was administratively exempt.  The court rejected the dispatcher's attempted "reliance on the production work dichotomy," noting that "the administrative/production dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis."  *Id.* at *7 (citing *Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employee*, 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) ("We do not believe that it is appropriate to eliminate the [production work dichotomy] entirely from the administrative exemption, but neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption.")).  Similarly, in *Neary v.*

*Metropolitan Property & Casualty Insurance Co.*, 517 F. Supp. 2d 606, 614 (D. Conn. 2007)—which Plaintiffs cite—the court held that, "while the administrative/production … distinction is relevant, it is not dispositive … the Department of Labor [has] stated that 'the dichotomy has [n]ever been [n]or should be a dispositive test for exemption.'"  (citations and internal punctuation omitted); *see* Def.'s Mem. 18-20.  Thus, the Court should not render a dispositive ruling based on a non-dispositive distinction.

But even if the non-dispositive administrative/production dichotomy were considered, applicable legal authority makes clear that, in their work as Pratt dispatchers, Plaintiffs—who testify that they did not actually deliver goods or services in interstate commerce, but instead administered the movement of these *for* Pratt—fall on the *administrative*, as opposed to the *production*, side of the dichotomy.  *See* Def.'s Mem. 17-25.  Relying solely on cases that are factually inapposite or decided outside this Circuit, Plaintiffs argue that, because work related to dispatching is not expressly listed in the Regulations and because not *every* business needs dispatchers to function properly, they must fall on the

production side.[3]  Pls.' Br. 35-36.  The Eleventh Circuit has expressly rejected this argument.

In *Rock v. Ray Anthony International, LLC*, 380 F. App'x. 875 (11th Cir. 2010)—a case that Plaintiffs fail to distinguish and completely ignore in their Brief—the Court of Appeals: (i) discussed the administrative/production distinction in the context of the administrative exemption; (ii) upheld the district court's ruling that the plaintiff-dispatcher's work was "administrative," not "production;" and (iii) upheld the lower court's conclusion that the plaintiff-dispatcher was exempt under the administrative exemption.  *Id.* at 876-80.  Notably—as in this case—the plaintiff-dispatcher's primary duty there was managing the day-to-day operations of the employer's dispatch department.  *Id.* at

---

[3] The cases that Plaintiffs rely on either were decided outside the Eleventh Circuit, *see Iaria v. Metro Fuel Oil Corp.*, 2009 U.S. Dist. LEXIS 6844, **11-13 (E.D.N.Y. Jan. 30, 2009), or are factually inapposite, *see Kessler v. Lifesafer Serv. Providers, LLC*, 545 F. Supp. 2d 1244, 1247 (M.D. Fla. 2008) (plaintiffs were responsible for actually performing manual labor work of installing interlock devices on cars, which was purpose of defendant's business); *Cotton v. HFS-USA, Inc.*, 620 F. Supp. 2d 1342, 1348 (M.D. Fla. 2009) (field supervisor was responsible for supervising actual installation of home-finishing services and did not perform office work); *Alvarez v. Key Transp. Serv. Corp.*, 541 F. Supp. 2d 130, 1313 (M.D. Fla. 2008) (plaintiff-limousine-dispatcher was not administratively exempt where, *inter alia*, he spent time monitoring traffic and performing manual labor duties including cleaning and washing cars); *Bubbenmoyer v. Boca Bargoons, Inc.*, 2013 U.S. Dist. LEXIS 20138, at **21-22, 30-33 (M.D. Fla. Jan. 30, 2013) (plaintiff-fabric-store-employee was not administratively exempt where he spent most of his time selling fabric to store customers, which was central purpose of defendant's business, and performing manual labor repairs at store).

878-79.  Even more notably, the district court's opinion, which was affirmed in its entirety, contains an even more detailed discussion making clear that, for purposes of the second element of the administrative exemption, the job duties listed in the Regulations are *only illustrative* and that the correct inquiry is whether the employee performed work of the type that the *specific business at issue* needs in order to function properly.  *Rock v. Sunbelt Cranes*, 678 F. Supp. 2d 1264, 1271 (M.D. Fla. 2009), *aff'd*, 380 F. App'x 825 (11th Cir. 2010).

As carefully explained in Pratt's summary judgment Memorandum, there is no dispute here that, like the employer in *Rock*, Pratt could not have fulfilled its central business objective of delivering products to customers via its truck drivers without the administrative work that Plaintiffs and other dispatchers did.[4]  *See* Def.'s Mem. 17-31.  As such, Plaintiffs' self-serving attempt to portray themselves as doing "production" work, as opposed to the essential administrative work that they did, finds no support in law or fact and must be rejected.  Thus, as fully set

---

[4] It is also undisputed that, as Pratt dispatchers who ran and managed the day-to-day operations of the Conyers' dispatch department, Plaintiffs not only coordinated and directed the dispatch of loads, but they also did work in areas *specifically contemplated by the Regulations* as administratively exempt work, including duties related to *safety*, *customer relations*, *legal compliance*, *personnel management*, and *profit and loss*.  *See* 29 C.F.R. 541.201(b); Def.'s Mem. 21-25.  Plaintiffs conveniently ignore this undisputed record evidence in their Brief.

forth in Pratt's Memorandum, Pratt satisfies each element of the administrative exemption as a matter of law and so is entitled to summary judgment.

## 2. Plaintiffs were also exempt executive employees.

Even if the record evidence were not conclusive on the administrative exemption (which it is), the record evidence on the executive exemption—and particularly Plaintiffs' admissions—shows that Pratt also satisfies all four elements of this exemption. *See* Def.'s Mem. 5-17. Plaintiffs challenge only the last element (that Pratt gave their recommendations about changes in employees' status "particular weight"). Pls.' Br. 37-41; *see* 29 C.F.R. 541.100(a)(4). Their challenge fails.

For one thing, it is undisputed that, as Pratt dispatchers, Plaintiffs prepared formal evaluations of truck drivers' job performance and also monitored the drivers' day-to-day performance, imposing or recommending discipline to upper management when they deemed it appropriate. *See* Def.'s Mem. 15-17. For another thing, it is undisputed that Plaintiffs' evaluating a driver's performance (whether in the form of a negative or positive performance review) or preparing a disciplinary write-up about a driver was an important factor in deciding whether drivers received pay increases, which is plainly a change in employee status. *See id.* 16-17; *Taylor v. Autozone, Inc.*, 2012 WL 254238, at *14 (D. Ariz. Jan. 27,

2012) (granting summary judgment on executive exemption where, *inter alia*, plaintiffs were responsible for completing performance reviews that upper management relied up when deciding pay increases).  Plaintiffs do not and indeed cannot dispute this record evidence—which includes their *own* testimony.  Instead, they quibble in three ways: (i) with the language of a dispatcher job description, (ii) how often Pratt did formal performance reviews of its drivers, and (iii) about a PowerPoint presentation slide they allege somehow changed their exempt work.  These arguments lack merit.

First, in an interesting twist on "that's not in my job description," Plaintiffs argue that *not all* the exempt executive work they *admit* they did was listed in a dispatcher job posting or a dispatcher job description created several months *after* their employment ended.  Misconstruing the job posting and job description and reading them with narrow, self-serving eyes does not suffice, however.  These documents state that the dispatcher is expected to "manage" drivers, to "monitor driver performance," and, in addition to the tasks specifically listed, complete "*all other duties as assigned*."  Pls.' Exs. 14-15 to Broyles Dep.  Moreover, for establishing exempt status, it is well-established that job descriptions are only illustrative, not determinative, especially where, as here, Plaintiffs *admit* they did the exempt work at issue.  *See Gregory v. First Title Of America, Inc.*, 555 F.3d

1300, 1307 (11th Cir. 2009) ("plaintiff's job description …is but one of many factors to be considered but is certainly not dispositive on the issue of her status"); *accord Much v. PGA Tour, Inc.*, 2006 WL 510068 *4 (M.D. Fla. Mar. 2, 2006) ("In determining what an employee's day-to-day job activities are, general job descriptions contained in an employee's resume or prepared by the employer may be considered, but are not determinative, and descriptions contained in depositions and affidavits should be considered as well."); *McCullough v. Lennar Corp.*, 2011 WL 1585017, at *19 (S.D. Cal. Apr. 26, 2011) (rejecting plaintiff's claim that he could not be administratively exempt where job description contained no administrative duties because "the standard to determine whether one is exempt or not must be based on the actual nature of the duties performed by the employee and not by an employee's title or job description").

Second, Plaintiffs argue that their input and recommendations were not given weight because they prepared formal job evaluations of drivers only in years 2007 and 2011. This misses the point. As the record evidence shows, Pratt did not conduct formal evaluations of truck drivers during the intervening years. *See* Holley Decl. ¶ 7. Of course, the law does not require Pratt to evaluate its truck drivers formally with any particular frequency. What is significant is that *when* Pratt chose to conduct driver evaluations, it relied on its *dispatchers* to complete

11

the reviews.  Def.'s Mem. 15-16.  Moreover, the lack of opportunity to perform exempt work (*i.e.*, where the occasion to recommend a change in employee status does not regularly present itself) does not destroy the status of an otherwise-exempt employee.  *See Grace v. Family Dollar Stores, Inc.*, 2011 WL 4459191, at *7 & n. 12 (W.D.N.C. Sept. 26, 2011) ("The fact that [plaintiff] did a good job maintaining a staff during the relevant time period, such that she did not need to hire or fire any staff, does not defeat the exemption because she did have the authority to hire, even though she did not exercise that authority.").

Finally, Plaintiffs argue that their input and recommendations on employee status were not given particular weight because of one slide in a PowerPoint presentation that their manager Tony Broyles made in December 2011, shortly after he was hired.  Pls.' Br.  37; Pls.' Ex. 16 to Broyles Dep.  In his introductory Safety Meeting, Broyles did emphasize to the Conyers employees that, as the Fleet Manager for the Conyers facility, he was the official supervisor of the truck drivers and that he alone had the authority to approve driver requests for vacation and leave.  *Id.*  But it is equally undisputed that Broyles also testified that: (i) he made this decision to ensure consistency in handling driver requests for vacation and leave; (ii) as the Fleet Manager, his focus was always on high-level operations (he was responsible for both the Conyers facility and the Statesville, North Carolina

12

facility); (iii) he "depended heavily on the dispatchers to manage the day-to-day operations of the dispatch department, including planning and directing the work of the truck drivers and third –party carrier drivers"; and (iv) during the December 2011 Safety Meeting at issue, he reminded the drivers that, although he was their official supervisor, they would be taking day-to-day direction from the *dispatchers*, which they were *required* to follow. Broyles Decl. ¶¶ 9-10.

Even more significantly, the record also demonstrates that upper management had no choice but to give Plaintiffs' recommendations concerning the employment status of the drivers "particular weight." As fully set forth in Defendant's Memorandum, the record reflects that Holley and Broyles did not directly oversee the work of the drivers with whom Plaintiffs worked, but worked in a separate geographic location during different work hours, and spent insignificant amounts of time in the dispatch office. Def.'s Mem. 12-13, 15-17. As a matter of *necessity*, then, they not relied upon the dispatchers' (including Plaintiffs') knowledge of drivers' work performance, but they *had* to give their knowledge particular weight.

In sum, none of these three arguments can alter Plaintiffs' own testimony and the other record evidence to the contrary, which makes abundantly clear that, as dispatchers, Plaintiffs effectively managed the operations of the Conyers dispatch department and its team of truck drivers. Def.'s Mem. at 5-17 (citing Barlow Dep.

v. II, 83-84 & Ex. 2 (admitting that while he was on duty as the sole second-shift dispatcher, he "effectively led" a team of 15-to-24 drivers), and Allemani Dep. 101, 104-05, 157 (admitting that while serving as the lone dispatcher on duty, he was responsible for directing the work of up-to-18 Pratt truck drivers as well as 4-to-6 third-party-carrier drivers)). This makes sense because, whether from Broyles or anyone else, job descriptions and titles are not determinative of exempt status. What is determinative is the *actual work performed*. Given the executive-exempt work that Plaintiffs admit they did, which they now attempt to disclaim, *Pratt* is entitled to judgment as a matter of law on this exemption.

### 3.   Plaintiffs are also exempt under the combination exemption.

In the same vein, Plaintiffs claim that they are entitled to summary judgment on the "combination exemption." Their sole argument, however, is that Pratt has not proved "[the] exist[ence] [of] a series of underlying exempt duties." Pls.' Br. 41-42. This argument borders on being disingenuous. There is abundant, undisputed record evidence that, as dispatchers, Plaintiffs' primary duty was doing exempt administrative and executive work. *See* Def.'s Mem. 5-31. Thus, Pratt has more than met its burden of proving the existence of an underlying series of exempt duties.

14

**C. Because Plaintiffs' Work Affected Safety, the Motor Carrier Exemption Applies.**

Respectfully, given the record evidence on the administrative and executive exemptions, the Court need not decide whether the Motor Carrier Act (MCA) exemption also applies here.  Def.'s Mem. 5-31.  Even so, the record evidence does show that, as Pratt dispatchers, Plaintiffs' work directly affected safety.  Under the MCA exemption, the FLSA's overtime-pay requirement does not "apply to any employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49."  U.S.C. 213(b)(1); *see Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 (11th Cir. 1991).  To establish this exemption, Pratt must show that Plaintiffs: (i) were "'employed by carriers whose transportation of property by motor vehicle is subject to' the Secretary's jurisdiction;" and (ii) "engage[d] in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce."  29 C.F.R. § 782.2(a)(1)-(2).  Plaintiffs do not dispute that the first requirement is met.  Pls.' Br. 43 n.17.

As for the second, the record evidence and applicable law show that this requirement is met, too.  To prove this, Pratt offers sufficient evidence for a jury to conclude that, as dispatchers, Plaintiffs did work "directly affect[ing] the safety operation of motor vehicles."  Although the Supreme Court and DOL have

specifically held that this exemption applies to "drivers, mechanics, loaders and helpers," *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947), "the name that is given to an employee's position or the work that an employee performs is not controlling in the determination of whether the exemption is applicable." *McIntrye v. FLX of Miami, Inc.*, 2008 WL 4541017, at *6 (S.D. Fla. Oct. 8, 2008). Instead, "[t]he fundamental test is simply that the employee's activities affect safety of operation." *Levinson v. Specter Motor Serv.*, 330 U.S. 649, 672 (1947). For example, in *McIntyre*, the district court found that a trucking company's dispatchers were exempt pursuant to the MCA because their work affected safety. 2008 WL 4541017 at **6-7. The specific work that the court noted included calling mobile mechanics for stranded truckers, making decisions concerning assignment of specific loads to drivers and vehicles based on assessment of vehicle safety and appropriateness of the chosen vehicle for the load at issue, checking the vehicles for tire safety and adequate oil, and ensuring that the trucks were in safe operation before a driver left the facility for deliveries. *Id.* at **1, 6-7. Likewise, the Northern District of Georgia has also found dispatchers to be exempt under the MCA where their work affected the safety of motor vehicles. *See Wirtz v. Robinson & Stephens, Inc.*, 1972 WL 852, at *5 (N.D. Ga. 1972)

(applying MCA and finding mechanics, wrecker and truck drivers, drivers helpers, loaders, yardmen and dispatchers exempt).

Here, the record evidence reflects that Plaintiffs performed numerous job functions that directly affected the safety of the trucks Pratt moved in interstate commerce, including: (i) ensuring that drivers completed pre-and post-inspection reports for their trucks; (ii) coordinating needed truck and trailer repairs; (iii) issuing Purchase Order numbers for trucks to receive on-the-road maintenance; (iv) sending drivers home who were too sick to work; (v) serving as drivers' first point of contact in the event of a breakdown or accident; and (vii) ensuring that drivers complied with DOT safety requirements for random-drug tests and maximum-hours driven.  Weimer Dep. 17, 20-22, 42-43; Smith Dep. 31-36; Olshefski Dep. 22-23, 34-38, 40-42, 62, 70-71; Barlow Dep. v. II 15-17, 21, 51; Barlow Dep. v. III 58-60, 86 & Ex. 19; Barlow Dep. v. IV 29; Allemani Dep. at 136-37, 140-44; Broyles Decl. ¶ 11.  Even assuming Plaintiffs did exempt administrative and executive work, this record evidence is more than sufficient to allow a reasonable jury to conclude that they were also exempt under the MCA. As such, Plaintiffs' request for summary judgment on this affirmative defense should be denied.

**D.  The Proper Method of Calculating Overtime Damages Is Not Ripe for Determination.**

The Court should deny Plaintiffs' motion for summary judgment on the proper method for calculating damages in overtime cases. For some 19 pages (pages 10-29), Plaintiffs argue—without citing any record evidence or specific facts—that the "fluctuating work week method" for calculating damages "lacks any legal foundation" and should be deemed "inapplicable to misclassification cases."  Pls.' Br. 11, 29.  Specifically, they contend that any damages awarded here must be calculated "by multiplying the employee's regular rate by one and one-half."  *Id.* 10.  In doing so, Plaintiffs improperly seek a premature advisory opinion on an issue that is not ripe.

It is well established that Article III of the U.S. Constitution limits the jurisdiction of federal courts to actual cases and controversies, *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166 (11th Cir. 2012) (citing *Flast v. Cohen*, 392 U.S. 83, 94, (1968)), and that "standing, ripeness, and mootness …go to the heart of the Article III case or controversy requirement." *Christian Coal., Inc. v. U.S.*, 662 F.3d 1182, 1189 (11th Cir.2011) (quotations omitted).  In particular, the ripeness doctrine prevents courts from prematurely adjudicating issues that may never arise.  *See Yacht Club v. Lexington Ins. Co.*, 509 Fed. App'x. 919, 921-22 (11th Cir. 2013) ("The ripeness doctrine protects federal courts from engaging in

18

speculation or wasting their resources through the review of potential or abstract disputes… [and] … seeks to avoid entangling courts in the hazards of premature adjudication.").

For our purposes here, courts have repeatedly rejected—on ripeness grounds—pre-liability summary-judgment motions like Plaintiffs that seek a ruling on the correct method of calculating damages, which may or may not be awarded in a particular case.  For example, in *Cooke v. General Dynamics Corp*., 1998 WL 696013, at *1 (D. Conn. Sept. 11, 1998), the employer moved for summary judgment on the correct method of calculating damages *in the event* it was found liable for violating the FLSA.  *Id.* at *1.  The court denied the motion as premature, finding that, under Article III, the issue would be ripe for decision only "when, and if, defendant's liability is established."  *Id.*  The court also concluded that the motion sought "an advisory opinion outlining what the court would do if certain events were to eventually come to pass" and that "it would be improper and outside of the court's authority to issue such a ruling."  *Id.*  Other courts around the country faced with the same or similar pre-liability summary-judgment motions on damages are in accord.[5]

_____

[5] *E.g., Lovely H. v. Eggleston*, 2012 WL 4459463, at *2 (S.D.N.Y. Sept. 19, 2012) ("It is axiomatic that summary judgment as to damages can only follow a determination that damages are in fact owed … It is difficult to imagine how the

Likewise, this Court should deny Plaintiffs' summary-judgment motion on

damages calculations on ripeness grounds because, of course, there has not yet

been a finding of liability or an award of damages and because no specific facts

form the basis of Plaintiffs' petition for judgment as a matter of law.  Assuming,

however, the Court were to address this legal issue, Pratt respectfully submits that,

setting aside Plaintiffs' disagreement with the relevant jurisprudence, the

"fluctuating work week" or "half-time" method of calculating overtime damages

for misclassified employees has long been recognized as proper in appropriate

---

Court could rule on damages ... without first determining the liability issue ... In the absence of such a finding, any such determination could only amount to an inappropriate advisory opinion.") (internal citations omitted); *Asher Associates, LLC v. Baker Hughes Oilfield Operations, Inc.*, 2009 WL 1468709, at *2 (D. Colo. May 20, 2009) (rejecting defendant's pre-liability motion for summary judgment based on a "hypothetical scenario" and holding that "federal courts have no power to give advisory opinions or to adjudicate constitutional questions in the absence of concrete legal issues, presented in actual cases, not abstractions …[a]ccordingly, because I find that [d]efendant's motion is …seeking an advisory opinion … the motion is denied"); *Pelt v. Utah*, 2008 WL 2388280, at **2-3 (D. Utah Jun. 9, 2008) (declining to rule on the legal issue of whether defendant could seek certain off-sets in the event damages were awarded as the issue was not yet ripe and holding that, in the absence of a finding of liability, "any ruling on the off-set issue would improperly provide an advisory opinion"); *Kendall McGraw Labs, Inc. v. Community Mem. Hosp.*, 125 F.R.D. 420, 422 (D.N.J. 1989) (holding that "judicial effort would be ill-spent" on determining damages pre-liability and rejecting the parties' request for "a legal 'what if' pronouncement of the appropriate standard by which [damages] calculations may, or may not, be made at some future date"); *see Thompson v. Scott Petroleum Corp.*, 2012 WL 827077, at *4 (W.D. Ark. Mar. 9, 2012) ("The Court declines to address the ancillary issue of the fluctuating workweek.  This issue is best addressed if and when it becomes appropriate at trial.").

cases by the Supreme Court, the Eleventh Circuit and other Courts of Appeals, and the Department of Labor.[6]  *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572 (1942); *accord Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1310-12 (11th Cir. 2013) (recognizing that, in appropriate cases, *Missel* allows overtime damages to be calculated for remedial purposes using the "fluctuating work week method"); *Ransom v. M. Patel Enters., Inc.,* 2013 WL 4402983, **5-8 (5th Cir. Aug. 16, 2013); *Desmond v. PNGI Charles Town Gaming, L.L.C.,* 630 F.3d 351, 357 (4th Cir. 2011)*; Urnikis-Negro v. Am. Family Prop. Servs.,* 616 F.3d 665, 681 (7th Cir.2010); *Clements v. Serco, Inc.,* 530 F.3d 1224, 1230–31 (10th Cir. 2008); *Valerio v. Putnam Assocs. Inc.,* 173 F.3d 35, 39 (1st Cir.1999); *Yadav v. Coleman Oldsmobile, Inc.*, 538 F.2d 1206, 1207-08 (5th Cir. 1976); U.S. DOL Opinion Letter 2009-3 (Jan. 14, 2009).  Accordingly, Pratt asks the Court to deny Plaintiffs' summary-judgment motion on calculation of damages as not ripe.

**E.  Plaintiffs' Request for a Ruling on Pratt's "Good Faith" Is Also Premature.**

Plaintiffs' request that the Court issue a ruling on whether Pratt can prove the "good faith defense" to liquidated damages under 29 U.S.C. § 260, is likewise premature. As the Eleventh Circuit and multiple district courts in this Circuit have

---

[6] Pratt is glad to provide the Court with more detailed briefing on these issues. Also, Pratt respectfully reserves, and does not waive, its right to argue, at the appropriate time, that any overtime wages owed should be calculated using the "fluctuating work week" or "half-time" method.

held, the issue of an employer's good-faith defense to liquidated damages is

appropriate for determination only if and when an FLSA violation is actually

established.[7] *Atlanta Prof'l Firefighters Union, Local 134 v. Atlanta*, 920 F.2d

800, 806 (11th Cir. 1991) ("Only a violation of the FLSA results in a right to

liquidated damages under the Act."); *Fuentes v. CAI Intern., Inc.*, 728 F. Supp. 2d.

1347, 1359 (S.D. Fla. 2010) (finding that "the issue of 'good faith' is premature as

the issue[s] of defendant's violations of the FLSA and whether it was willful have

yet to be determined"); *Cusumano v. Maquipan Intern, Inc*., 390 F. Supp. 2d 1216,

1222–23 (M.D. Fla. 2005) ("In the absence of a determination of an FLSA

violation, consideration of the issue of liquidated damages, and thus the associated

affirmative defense of good faith, is premature.").  Again, no violation of the FLSA

has yet been established.  To the contrary, the record evidence shows that Pratt

properly classified Plaintiffs and other dispatchers as exempt administrative and

executive employees.  As such, determining whether Pratt can establish the "good

faith" defense must wait until Plaintiffs have actually established at trial that it

violated the FLSA.  *Atlanta Professional Firefighters Union*, 920 F.2d at 806.

---

[7] Plaintiffs contend in their Brief that they have met their *prima facie* case under
the FLSA and thus need only prove the amount of damages at trial. Pl.'s Br. 8-10.
This misstates the law.  Whether Plaintiffs have met their *prima facie* burden is
irrelevant given Pratt's ability to prove, as a matter of law, its affirmative defenses,
namely, that Plaintiffs were exempt under the administrative, executive and
combination exemptions.

But even if the Court were to find that the good-faith defense should be decided at this pre-liability stage, summary judgment for Plaintiffs must nevertheless be denied.  The record evidence demonstrates that a reasonable jury could easily conclude that Pratt's determination of whether Plaintiffs were exempt was in fact made in good faith, both subjectively and objectively.  *See Smyth v. Wynfield*, 451 F.Supp.2d 1327, 1337 (N.D. Ga. 2006) (determination of good faith includes both subjective and objective components).  To be sure, Pratt subjectively believes in good faith that its dispatchers were and still are exempt.  *See* Duty Dep. 22-23.  Similarly, a jury could find the objective component to be met here as well. Specifically, in 2008, as part of a payroll restructuring, Pratt reanalyzed the exempt classification of numerous jobs, including the dispatcher position.  Relying on the knowledge and experience of its Human Resources professional Bryon Duty as well as on the advice of ADP, a leading payroll company familiar with industry payroll and classification standards, Pratt did reclassify some positions, but decided the dispatcher position was properly classified as exempt.  *Id.* 15-23.  As this Court has previously held, making an exemption decision based on an industry standard at a minimum raises a genuine issue of fact precluding summary judgment against the employer on whether it acted in good faith.  *Russell v. Promove, LLC*, 2009 WL 1285885, at *6 (N.D. Ga. May 5, 2009) (Story, J.).

In sum, while determining whether to assess liquidated damages is premature at this pre-liability stage (because 29 U.S.C. § 260 applies only *if* Plaintiffs first establish that Pratt violated the FLSA, which they have not), even if the Court concludes otherwise, Pratt submits that this record evidence is more than sufficient to allow a reasonable jury to conclude that Pratt acted in "good faith," precluding summary judgment in Plaintiffs' favor on liquidated damages.

## II.   CONCLUSION

For the reasons set forth above and in Pratt's Motion for Summary Judgment [Doc. 67], Pratt respectfully requests that the Court deny Plaintiffs' Motion for Partial Summary Judgment and enter judgment as a matter of law for Pratt on all Plaintiffs' claims.

Respectfully submitted, this 25th day of October, 2013.

s/ Lauren H. Zeldin
Lauren H. Zeldin
(Georgia Bar No. 368999)
lauren.zeldin@ogletreedeakins.com
A. Craig Cleland
(Georgia Bar No. 129825)
craig.cleland@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree Street, NE, Suite 4800
Atlanta, GA  30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

ATTORNEYS FOR DEFENDANT
PRATT (CORRUGATED LOGISTICS),
LLC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DENNIS ALLEMANI and | ) | |
| NATHANIEL BARLOW, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:12-CV-00100-RWS |
| PRATT (CORRUGATED | ) | |
| LOGISTICS), | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF COMPLIANCE**

This certifies that Defendant's Response in Opposition to Plaintiffs' Motion for

Partial Summary Judgment was prepared using Times New Roman 14 point font in

accordance with LR 5.1(C).

This 25th day of October, 2013.

_s/ Lauren H. Zeldin_
Lauren H. Zeldin
Georgia Bar No. 368999

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DENNIS ALLEMANI and | ) | |
| NATHANIEL BARLOW, JR., | ) | |
| | ) | |
|   Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 1:12-CV-00100-RWS |
| PRATT (CORRUGATED | ) | |
| LOGISTICS), | ) | |
| LLC, | ) | |
| | ) | |
|   Defendant. | ) | |

## CERTIFICATE OF SERVICE

I certify that, on October 25, 2013, I served a copy of this Defendant's

Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment upon

the following counsel of record for Plaintiffs via the CM/ECF system:

Benjamin Stark, Esq.
Barrett & Farahany, LLP
1100 Peachtree Street, Suite 500
Atlanta, GA 30309

*s/ Lauren H. Zeldin*
Lauren H. Zeldin
Georgia Bar No. 368999

27